449 So.2d 359 (1984)
Stephen Joel ROSEN, a minor BY AND THROUGH His Father and Next Friend, Michael Rosen and Barbara Beth Rosen, a Minor, by and through Her Father and Next Friend, Michael Rosen, Appellants,
v.
Michel ZORZOS; Royal Insurance Company of Canada, Etc., Champion Services, Inc. D/B/a Budget Rent-a-Car of Clearwater, Florida and National Union Fire Insurance Company of Pittsburgh, Etc., Appellees.
No. 83-291.
District Court of Appeal of Florida, Fifth District.
April 12, 1984.
Walton B. Hallowes, Jr., and Darrell F. Carpenter, of Wells, Gattis, Hallowes & Holbrook, P.A., Orlando, for appellants.
Chris W. Altenbernd, Martin L. Garcia, of Fowler, White, Gillen, Boggs, Villareal & Baker, P.A., Tampa, for appellees Champion Services, Inc., d/b/a Budget Rent-A-Car of Clearwater, Florida and Nat. Union Fire Ins. Co. of Pittsburgh, a New York Corp.
*360 James A. Murman of Barr, Murman & Tonelli, P.A., Tampa, for appellees Michel Zorzos & Royal Ins. Co. of Canada.
DAUKSCH, Judge.
This is an appeal from an order granting defendants' motion to dismiss for failure to state a cause of action. The plaintiffs are Steven Joel Rosen and Barbara Beth Rosen, both minor children of Michael Rosen. The plaintiffs filed separate complaints alleging the loss of care, comfort, society and parental companionship, instruction and guidance of their father as a result of injuries he sustained in an automobile accident negligently caused by the defendants. The two actions were consolidated and an amended complaint was filed.
The only facts of record in this case are those contained in the amended complaint. Plaintiffs (appellants on appeal) contend that Michael Zorzos, defendant,[1] negligently operated and maintained a motor vehicle owned by defendant, Champion Services, Inc. d/b/a Budget Rent-A-Car of Clearwater, Florida,[2] causing an accident in which appellants' father was seriously injured. It is alleged that Mr. Rosen's injuries required substantial hospitalization following the accident and a long period of convalescence. Appellants assert that they were entitled to damages for the loss of their father's consortium during the period of his incapacitation. The term consortium in the context of the parent-child relationship refers to the care, comfort, society and parental companionship arising out of the relationship between a parent and child. The trial judge dismissed the complaint with prejudice for failure to state a cause of action.
The issue presented on appeal is whether this court should recognize a cause of action on behalf of minor children for loss of their living parent's care, comfort, society and parental companionship, instruction and guidance arising out of injuries caused by the negligence of a third person. After careful review of the arguments presented, we conclude that such a cause of action should be recognized.
At common law there was no right of action to a child for loss of parental consortium resulting from tortious injury to a parent and such an action has not been provided by statute. Clark v. Suncoast Hospital, Inc., 338 So.2d 1117, 1118 (Fla. 2d DCA 1976). The two district courts in Florida presented with this question have declined to create a right in a minor child to his living parent's consortium in the absence of legislation. Fayden v. Guerrero, 420 So.2d 656 (Fla. 3d DCA 1982); Ramirez v. Commercial Union Insurance Co., 369 So.2d 360 (Fla. 3d DCA 1979); Clark.
The leading case in Florida on the subject is Clark v. Suncoast Hospital, Inc., decided October 27, 1976. In rejecting a cause of action in favor of minor children, the second district reasoned:
We, in effect, are asked to judicially declare that there are derivative claims in favor of children as a result of injuries to their parents. Sensitive as we are to the claims of the Clark children and all others who may be deprived of those intangible moral benefits which only parents can provide, we decline the invitation for a judicial intrusion into the area.
Clark, 338 So.2d at 1118. The Clark court gave various reasons why such a right of action has not been recognized in other jurisdictions. These considerations include:
(1) The absence of any enforceable claim on the child's part to the parent's services, (2) the absence of precedent, (3) the uncertainty and remoteness of the damages involved, (4) the possible overlap with the parent's recovery, (5) the multiplication of litigation, (6) the possibility of settlements made with parents being upset, (7) the danger of fabricated actions, (8) the increase of insurance costs, and (9) the public policy expressed in some jurisdictions in the enactment of "heart balm" statutes.
*361 Clark, 338 So.2d at 1118-1119, citing from a Note, Torts  Parent-Child  Actions by Child for Indirect Interference with Family Relationship, 54 Michigan Law Review 1023 (1956).
The Clark court was persuaded by two arguments in deciding not to recognize a cause of action for parental consortium. First, the court insisted that any formulation of a child's right of action should be the product of the legislative process rather than judicially pronounced. Second, the court was concerned with the fact that other jurisdictions had unanimously held that a cause of action did not lie. We hold that neither of these reasons provide an adequate basis upon which to deny such an action.
Addressing the Clark court's first argument, it has never been the policy of Florida courts to abdicate their responsibility to the legislature when presented with such an important social concern. The cause of action for loss of consortium is a creation of the common law and its continued development is properly within judicial authority and responsibility.[3] Florida courts did not await legislative action to abrogate the common law rule which prevented a wife from suing for loss of spousal consortium. Gates v. Foley, 247 So.2d 40 (Fla. 1971). See also, Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) (judicial retreat from common law doctrine of contributory negligence as an absolute bar to recovery in tort); Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480 (1941) (judicial modification of common law doctrine that gave the father a superior right to the custody of a child); Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932) (judicial removal of common law exception of a married woman from causes of action based on contract or mixed contracts in tort); Waller v. First Savings and Trust Co., 103 Fla. 1025, 138 So. 780 (1931) (judicial retreat from common law principal that an action for personal injuries was abated upon death of tortfeasor); Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957) (judicial decision that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior). Similarly, we have determined that compelling reasons exist to make a needed change in the law here.
The Clark court's second argument for denying a parental consortium claim is no longer persuasive. Since the Clark decision was rendered, the highest courts in three jurisdictions have changed their courses and judicially recognized the rights of a minor to sue for the loss of his living parent's consortium. See Weitl v. Moes, 311 N.W.2d 259 (Iowa 1981);[4]Berger v. Weber, 411 Mich. 1, 303 N.W.2d 424 (1981); Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. 507, 413 N.E.2d 690 (1980). In each of these cases, the courts confronted the arguments against recognition enumerated in Clark and concluded that they were insufficient to warrant a continuation of denying access to the courts by these aggrieved parties. See Weitl, 311 N.W.2d at 266-269; Berger, 303 N.W.2d at 425-427; Ferriter, 413 N.E.2d at 694-696.[5] Moreover, lack of precedent alone does not take away a common-law court's responsibility to decide each claim presented before it on its own merit.
*362 Turning now to the reasons underlying our decision we first take into consideration the existence of related causes of action under Florida law. In Florida, a married person may maintain an independent cause of action for loss of consortium of an injured spouse. Gates. Florida's wrongful death statute, section 768.21, Florida Statutes (1982), provides for recovery to both a surviving spouse and a minor child for loss of consortium in the event the spouse/parent dies as a result of the negligence of a third party. Finally, a parent may sue for the loss of custody, companionship, services and earnings of a child if the minor is wrongfully injured by a third person. 24 Fla.Jur., Parent and Child § 20; Wilkie v. Roberts, 91 Fla. 1064, 109 So. 225, 227 (1926).[6]
In recognizing the right of a child to parental consortium in wrongful death situations, it seems inconsistent to argue that such a cause of action should not lie if the parent is injured but does not die. The question should be posited: Has a child lost any less parental consortium when his injured parent lies comatose than when he actually dies? As the Supreme Court in Michigan opined when it judicially recognized the cause of action for a living parent's consortium:
We are satisfied that the real anomaly is to allow a child's recovery for the loss of a parent's society and companionship when the loss attends the parent's death but to deny such recovery where the loss attends the parent's injury.
Berger, 303 N.W.2d at 426.
Equally confusing is the rationale behind treating spousal consortium and parental consortium differently when the loss to the spouse/child can be just as devastating to each. One reason cited by several courts[7] for treating the marital relationship and the parent-child relationship differently is the assertion that a spouse's action for loss of consortium is based to a large extent on the impairment of the sexual relations of the couple and no similar element exists in the child's claim. In rejecting this argument when presented with it, the Supreme Court of Michigan stated:
Sexual relations are but one element of the spouse's consortium action. The other elements  love, companionship, affection, society, comfort, services and solace  are similar in both relationships and in each are deserving of protection.
Berger, 303 N.W.2d at 426.
Finally, the fact that Florida recognizes the right of a parent to sue for the loss of *363 companionship of his minor child who is wrongfully injured when the child has no such right, seems illogical. It is argued that such a position "runs counter to the fact that in any disruption of the parent-child relationship, it is probably the child who suffers most." Weitl, 311 N.W.2d at 269. As one commentator suggests:
Since the child in his formative years requires emotional nurture to develop properly, the loss of love, care and companionship is likely to have a more severe effect on him than on an adult; and society has a strong interest in seeing that the child's emotional development proceeds along healthy lines. Moreover, an adult is in a better position than a child to adjust to the loss of a family member's love, care and companionship through his own resources. He is capable of developing new relationships in the hope of replacing some of the emotional warmth of which he has been deprived. A child, however, is relatively powerless to initiate new relationships that might mitigate the effect of his deprivation. Legal redress may be the child's only means of mitigating the effect of his loss.
Note, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent, 56 B.U.L.Rev. 722, 742 (1976). To suggest that the disparate treatment between the parent and the child with respect to their right to each other's companionship is historically based and, consequently, should be perpetuated, is unpersuasive in light of the growing recognition of children's rights.[8]
Appellants also raise a constitutional issue regarding the present policy of denying children access to the courts. Article I, section 21, of the Florida Constitution provides: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." As this court said in Champion v. Gray, 420 So.2d 348 (Fla. 5th DCA 1982) "[t]he basic purpose of our court system is to provide a remedy to those who are injured by the fault of others." Id. at 350. There is no question that children who have been deprived of their parent's love and affection due to the negligence of a third party have suffered an injury. The fact that there is a statutory cause of action for loss of parental consortium when a parent dies supports appellants' contention that the legislature recognizes that such a loss is significant to a child. We believe that the loss of parental consortium is no less important when a parent survives than when he or she dies. Therefore, such an injury must be redressable.[9]
The jurisdictional issue raised by appellees  whether section 627.7403, Florida Statutes (1980) requires that appellants bring all derivative claims arising out of plaintiff's injuries in one action  cannot be *364 answered with reference to the record before us because there is no indication what statutes the previous cases were brought pursuant to. This issue can be presented to the lower court on remand.
Pursuant to Article V, Section 3(b)(4), Florida Constitution, we certify this decision to the Supreme Court as being in direct conflict with the Second and Third District Courts of Appeal. See Fayden v. Guerrero, 420 So.2d 656 (Fla. 3d DCA 1982); Ramirez v. Commercial Union Insurance Co., 369 So.2d 360 (Fla. 3d DCA 1979); Clark v. Suncoast Hospital, Inc., 338 So.2d 1117 (Fla. 2d DCA 1976).
This order granting the Motion to Dismiss is reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
ORFINGER, C.J., and COWART, J., concur.
NOTES
[1] Royal Insurance Company of Canada is Mr. Zorzos' insurer and is therefore joined as a party defendant.
[2] Budget Rent-A-Car of Clearwater was insured by National Union Fire Ins. Co. and is also joined by the plaintiffs as party defendant.
[3] See Weitl v. Moes, 311 N.W.2d 259, 266 (Iowa 1981); Berger v. Weber, 411 Mich. 1, 303 N.W.2d 424 (1981); Ferriter v. Daniel O'Connell's Son's, Inc., 381 Mass. 507, 413 N.E.2d 690 (1980); cf. Salin v. Kloempken, 322 N.W.2d 736, 741 (Minn. 1982) (Minnesota Supreme court declines to recognize the parental consortium action but specifically states that the issue is properly decided by the courts).
[4] The Iowa Supreme Court recently reconsidered its decision in Weitl and retracted the child's right to maintain an independent claim for parental consortium. See Audubon  Exira Ready Mix, Inc. v. Illinois Central gulf Railroad Company, 335 N.W.2d 148 (Iowa 1983). The Audubon decision is not an abandonment of the rationale underlying recognition of the parental consortium action; rather, it is based on a reinterpretation of an existing Iowa statute which was held to be controlling. Finding that a cause of action would lie pursuant to an existing statute obviates the need to create an independent cause of action.
[5] Several jurisdictions that have recently denied recognition of a child's cause of action for the loss of his living parent's consortium have stated the following reasons in support of their decision: Salin v. Kloempken, 322 N.W.2d 736 (Minn. 1982) (increased insurance costs, added expense of litigation and settlement, and considerations of public policy); Northwest v. Presbyterian Intercommunity Hospital, 293 Or. 543, 652 P.2d 318 (1982) (the child's injury does not result from the negligent treatment of himself but is a consequence of a negligent treatment of his parent and the tortfeasor has no obligation to the child for such injuries); Mueller v. Hellrung Construction Co., 107 Ill. App.3d 337, 63 Ill.Dec. 140, 437 N.E.2d 789 (1982) (multiplicity of claims, increase in court costs, social costs, increased insurance premiums); Suter v. Leonard, 45 Cal. App.3d 744, 120 Cal. Rptr. 110 (1975) (the injured parent already has a cause of action in which the child can share); Russell v. Salem Township, 61 N.J. 502, 295 A.2d 862 (1972) (a child is totally deprived of a parent's benefit when parent is killed but not, except in unusual circumstances, when he survives).
[6] At common law a father was entitled to these rights because they constituted a species of property in him. In Wilkie v. Roberts, the court ordered a new trial in an action for lost services of an injured ten year old boy on the ground that the $2,500 verdict was excessive and directed the father to introduce evidence of the services actually rendered by his son. In Yordon v. Savage, 279 So.2d 844 (Fla. 1973) the court stated that Wilkie authorized recovery for loss of the child's companionship, society, and services and further held that either parent could sue for these damages. However, some courts have limited Wilkie to apply only to recovery for damages as compensation for lost services. Youngsblood v. Taylor, 89 So.2d 503 (Fla. 1956); City Stores Co. v. Langer, 308 So.2d 621 (Fla. 3d DCA 1975).
[7] See e.g., Borer v. American Airlines, Inc., 19 Cal.3d 441, 563 P.2d 858, 138 Cal. Rptr. 302 (1977); Koeskela v. Martin, 91 Ill. App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980); DeAngelis v. Lutheran Medical Center, 84 App.Div.2d 17, 445 N.Y.S.2d 188 (1981); Salin v. Kloempken, 322 N.W.2d 736 (Minn. 1982).
[8] The majority of legal commentators support the recognition of an independent cause of action for parental consortium. See e.g., Note, Right of a Child to a Cause of Action for Loss of Society and Companionship When the Parent is Tortiously Injured, 28 Wayne L.Rev. 1877 (1982); Note, Child's Right to Sue for Negligent Disruption of Parental Consortium, 22 Washburn L.J. 78 (1982); W. Prosser, Law of Torts § 124 (4th Ed. 1971); Love, Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship, 51 Ind.L.J. 590 (1976); Note, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent, 56 B.U.L.Rev. 722 (1976); Note, The Child's Cause of Action for Loss of Consortium, 5 San.Fern.U.L.Rev. 449 (1977); Comment, The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal, 13 San Diego L.Rev. 231 (1975). Pound, Individual Interests in the Domestic Relations, 14 Mich.L.Rev. 177 (1916).
[9] Appellees respond to appellant's constitutional argument by asserting that Article I, Section 21 was never intended to independently create a new cause of action citing Harrell v. State Dept. of Health, Etc., 361 So.2d 715, 718 (Fla. 4th DCA 1978) and Kirkpatrick v. Parker, 136 Fla. 689, 187 So. 620 (1939). However, we deem parental consortium claims as arising out of the common law right to spousal consortium and the right of a parent to the services and companionship of his or her child. Therefore, as in the case of the wife's right to spousal consortium, the child's right to parental consortium has become a part of the common law pursuant to § 2.01, Fla. Stat. See Harrell v. State Dept. of Health, Etc.